**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ALYSSA S. PETERSON,<br>    Plaintiff, | No. 3:14-cv-01566 (SRU) |
| v. | |
| WELLS FARGO TRUSTEE, *et al.*,<br>    Defendants. | |

## <u>RULING AND ORDER</u>

Alyssa Peterson lost a mortgage foreclosure action in state court, and her appeal and eventual efforts to be heard *en banc* or by the Connecticut Supreme Court failed. She subsequently brought this action *pro se* in federal court, raising eight claims that predominantly were or could have been raised as defenses in state court. On the defendants' motion, for reasons of both issue and claim preclusion, I dismissed with prejudice all of Peterson's claims except slander of title. Peterson has moved for reconsideration of that order. In addition, the defendants have moved for summary judgment on Peterson's remaining claim, arguing that she has not satisfied the required element of damages for slander of title. Peterson has cross-moved for summary judgment, focusing on the elements of malice and special damages.

I find that Peterson has not made any new arguments or cited additional authority to warrant revisiting my order with respect to the motion to dismiss. I therefore deny her motion for reconsideration. I also conclude that Peterson has not produced sufficient evidence to satisfy the requisite elements for slander of title, and so grant the defendants' motion for summary judgment and deny Peterson's cross-motion for summary judgment.

I.      **Standard of Review**

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party, and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon mere allegations or denials, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such circumstances, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may be awarded. *Celotex*, 477 U.S. at 323.

## II.    Background

After unsuccessfully appealing from a judgment of foreclosure against her in Connecticut state court,[1] Alyssa Peterson filed this action in federal court in October 2014. She pleaded eight

---

[1] The Hartford Superior Court granted summary judgment to the bank in Peterson's mortgage foreclosure action in January 2010. The parties then entered a mediation program, and several months later Peterson filed for bankruptcy, which stayed the foreclosure. The bank sought relief from the stay, Peterson filed an objection, and a judgment of strict foreclosure entered in August 2012. Peterson filed a motion to open that judgment, which was denied in November 2012, and then a motion to reconsider, which was denied in December 2012. Peterson appealed to the Connecticut Appellate Court in January 2013, and that appeal was dismissed; she filed a motion for reconsideration *en banc*, and that motion was denied. She petitioned for certification to the

counts: (1) slander of title; (2) quiet title; (3) negligent misrepresentation; (4) fraud by non-disclosure; (5) wrongful disclosure; (6) negligence; (7) breach of implied covenant of good faith and fair dealing; and (8) declaratory and injunctive relief. The defendants filed a motion to dismiss the complaint under Rule 12(b)(6) for failure to state a claim for which relief can be granted. Because claim preclusion and issue preclusion attached to most of the claims as a result of the state court litigation, I granted the defendants' motion in part and dismissed with prejudice all counts except slander of title. *See* Order, Doc. No. 28.

In her amended complaint, Peterson asserts that she has a claim for slander of title because the defendants recorded a certificate of foreclosure on the Hartford Land Records on February 7, 2013, while enforcement of the judgment of foreclosure was stayed due to Peterson's appeal. Am. Compl., Doc. No. 32, at ¶ 84. The defendants acknowledge that the certificate of foreclosure was published during the stay and "not withdrawn," but deny any "false filing" and slander of title. Answer, Doc. No. 33, at ¶¶ 85, 96.

The defendants have moved for summary judgment, primarily arguing that Peterson has not met her burden to evidence the element of damages. *See* Mem. Supp. Defs.' Mot. Summ. J., Doc. No. 40, at 9 (contending that Peterson has been "unable to identify a single dollar of pecuniary damages attributable to the Certificate of Foreclosure"). In response, Peterson has cross-moved for summary judgment, claiming that the defendants maliciously published a false statement and acted with "reckless disregard of the truth," Pl.'s Mem. Supp. Pl.'s Mot. Summ. J., Doc. No. 49, at 26, as a result of which she suffered "personal harm and humiliation, legal harm, resulting in special damages and associated pecuniary costs," Am. Compl. Doc. No. 33, at ¶ 97.

---

Connecticut Supreme Court, which was denied, and she sought reconsideration *en banc* of that decision, which was also denied.

### III.    Discussion

#### A.  Peterson's Motion for Reconsideration

As an initial matter, Peterson has filed a motion for reconsideration of my earlier ruling dismissing seven of her eight claims in this litigation. *See* Pl.'s Mot. Recon., Doc. No. 29; Order, Doc. No. 28. For the following reasons, I deny her motion.

The standard for granting motions for reconsideration is strict: such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions for reconsideration will not be granted where the party merely seeks to relitigate an issue that has already been decided. *Id.* The three major grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478). None of those grounds is present in this case.

Peterson seems principally to rely—as she did in her opposition to the motion to dismiss—on an argument about the purportedly narrow scope of the *Rooker-Feldman* doctrine, or on her assertion that the Supreme Court "further narrowed the scope of *res judicata* relative to" that doctrine. *See* Pl.'s Mem. Supp. Pl.'s Mot. Recons., Doc. # 29-1, at 2. There is some confusion evident in her papers, however, about what exactly *Rooker-Feldman* is, and how it is distinct from *res judicata* (or how it is different from both issue and claim preclusion generally). The defendants did not move for any claims to be dismissed under *Rooker-Feldman*—rather,

they argued for dismissal on the basis of issue and claim preclusion, and I granted their motion

principally on the basis of the latter. (The first reference to *Rooker-Feldman* in this case was in

Peterson's opposition to the motion to dismiss. *See* Pl.'s Mem. Opp. Defs.' Mot. Dismiss, Doc.

No. 24, at 14.) Claim preclusion, or *res judicata*, is the principle that "a final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that were or

could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Burgos v.

Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). All but one of Peterson's claims were or could have

been raised in her state-court litigation, and it was on that basis that I dismissed those claims.[2]

The cases she cites in her motion for consideration are not inconsistent with that ruling.

     That is not to say that *Rooker-Feldman* would not have been applicable in this case, but

only that the defendants did not make that argument and that I therefore did not rule on the

question. Moreover, Peterson exhibits a basic confusion about the doctrine when she cites

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 26 (1987), for the proposition that sometimes "a federal

court can weigh in on a state court" and find that "federal claim(s) 'can succeed to the extent that

the state court wrongly decided the issues before it.'" Pl.'s Mem. Supp. Pl.'s Mot. Recons., Doc.

# 29-1, at 5. That language suggests the very *opposite* of *Rooker-Feldman*. The essence of the

*Rooker-Feldman* doctrine is that lower federal courts are not courts of appeal that sit in review of

state-court judgments. The language Peterson quotes is from Justice Marshall's *Pennzoil*

concurrence, in which he discusses the problem of federal constitutional claims that are

"inextricably intertwined" with the merits of state-court judgments, and which are therefore *not*

---

[2] Peterson also argues that subsequent Connecticut case law has rendered the judgment of
foreclosure against her vulnerable to direct attack on appeal in the Connecticut courts. *See
Hansen v. Wells Fargo Bank, N.A.*, No. FBT-CV-14-6042087, 2015 WL 4920560 (Ct. Super. Ct.
Aug. 10, 2015) (holding that state law claims for negligent misrepresentation and negligence
were not barred by defendants' compliance with federal laws). If so, that only confirms that
Connecticut state courts, not this court, are the appropriate tribunals to hear her claims.

*reviewable* by U.S. district courts. Justice Marshall wrote that "the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." 481 U.S. at 25 (Marshall, J., concurring). In such a case, he continued, "federal relief can only be predicated upon a conviction that the state court was wrong, [and] it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.* That is, Justice Marshall was describing issues that U.S. district courts *cannot* take up; and not, as Peterson's quotation seems to imply, issues that U.S. district courts *can* take up.

None of the cases cited or arguments made in Peterson's motion for reconsideration undermines my ruling on the motion to dismiss, and I deny her motion for reconsideration.

## B.  The Cross-Motions for Summary Judgment

Because Peterson has only made conclusory allegations of malice and pecuniary damages, and has not clearly shown that the defendants published a false statement, she has not satisfied the elements required for a slander of title claim. Therefore, I deny Peterson's motion for summary judgment and grant the defendants' motion for summary judgment.

### 1.  *Elements of Slander of Title*

"[S]lander of title is a tort whereby the plaintiff's claim of title to land or other property is disparaged by a letter, caveat, mortgage, lien, or some other written instrument." *Bellemare v. Wachovia Mortg. Corp.*, 284 Conn. 193, 202 (2007) (emphasis removed). The tort, originally available at common law, has been codified by Section 47-33j of the Connecticut General Statutes, which prohibits the "use [of] the privilege of recording notices . . . for the purpose of slandering the title to land," and awards the plaintiff damages and costs "if the court finds that

any person has recorded a claim for that purpose only." Conn. Gen. Stat. § 47-33j (2016); *cf.* Restatement (Second) of Torts § 624 (1977). The elements of slander of title are "[a] the uttering or publication of a false statement [b] derogatory to the plaintiff's title, [c] with malice, [d] causing special damages as a result of diminished value of the plaintiff's property in the eyes of third parties." *Elm City Builders v. Enterprise Condo. Ass'n*, 63 Conn. App. 657, 669, 778 A.2d 237 (2001). Notably, "the publication must be *false*," and "[p]ecuniary damages must be shown in order to prevail on such a claim." *Id.* at 669–70 (emphasis added).

2.   *Did the Defendants "Publi[sh] a False Statement Derogatory to [Peterson]'s Title"?*

The parties dispute whether Peterson has satisfied the element of false publication, but did not fully brief the issue in their papers. Nonetheless, even assuming that the certificate of foreclosure was "derogatory to the plaintiff's title," I conclude that Peterson has not shown that the defendants derogated her title by way of the "publication of a *false* statement." *See Elm City Builders*, 63 Conn. App. at 669 (emphasis added).

The defendants assert—and Peterson does not contest—that the "information contained within the recorded certificate of foreclosure [was] all truthful and supported by state trial records." Defs.' Mem. Opp. Pl.'s Mot. Summ. J., Doc. No. 56, at 9. Rather, Peterson argues that the certificate of foreclosure was a "false statement" because it was recorded during an automatic stay on enforcement of the judgment, which arose pursuant to Section 61-11(a) of the Connecticut Practice Book during the pendency of Peterson's state court appeal.[3] The defendants concede that Peterson's appeal had not been decided—and the trial court proceedings were

---

[3] "Except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment or order shall be automatically stayed until the time to file an appeal has expired. If an appeal is filed, such proceedings shall be stayed until the final determination of the cause." Conn. Practice Book § 61-11(a) (2016).

therefore stayed—when they recorded the certificate of foreclosure on February 7, 2013.[4] The question is whether the automatic stay rendered the certificate of foreclosure a "false statement" that would satisfy the first element of a claim for slander of title. *See Elm City Builders*, 63 Conn. App. at 669.

Under Section 61-11(a) and its predecessors,[5] when an appeal from a judgment has been filed, "proceedings to enforce or carry out the judgment" are "automatically stayed . . . until the final determination of the cause." Conn. Practice Book § 61-11(a). In this case, Peterson's appeal "stay[ed] the enforceability of the foreclosure judgment" and "vitiated the law day[] for redemption" of the mortgage. *See Farmers & Mechs. Sav. Bank v. Sullivan*, 216 Conn. 341, 347 (1990). Had Peterson "mo[ved] to compel the [defendants] to release the certificate of foreclosure" during the stay, the state trial court may well have granted her motion. *See Housekey Fin. Corp. v. Creed*, No. CV 95-0050887-S, 1998 WL 420695, at *3 (Conn. Super. Ct. July 17, 1998) (Curran, J.). Likewise, if the defendants had sought to enforce the judgment of foreclosure by ejecting Peterson and the judgment were later reversed, Peterson either could have petitioned the state appellate court for the "foreclosure [to be] set aside," *see Hartford Nat'l Bank & Tr. Co. v. Tucker*, 181 Conn. 296, 298–99 (1980), or else could have stated a claim against the defendants for "restitution . . . for what [s]he ha[d] lost," *Preisner v. Aetna Cas. & Sur. Co.*, 203 Conn. 407, 415 (1987).

---

[4] The defendants admit that Peterson appealed from the judgment of strict foreclosure on January 23, 2013, and that the Connecticut Appellate Court dismissed her appeal on March 13, 2013—more than a month after the Certificate of Foreclosure was recorded. *See* Mem. Supp. Defs.' Mot. Summ. J., Doc. No. 40, at 2–3.

[5] The current Section 61-11(a) formerly was Section 4046 until 1998 and, before that, Section 366. *See* Notes to Conn. Practice Book § 61-11(a) (2016); *Tomasso Bros. v. October Twenty-Four*, 230 Conn. 641, 653 n.13 (1994).

At the same time, however, "[t]he finality of a trial court judgment is not directly affected by the fact that an appeal automatically stays the enforcement of a judgment." *Id.* (citing Conn. Practice Book § 4046). "The stay does not vacate the judgment obtained by the successful litigant," but "merely denies that party 'the immediate fruits of his or her victory.'" *Id.* (quoting *Connolly v. Connolly*, 191 Conn. 468, 481 (1983)). Here, the defendants could not have enforced the judgment of foreclosure through ejectment until Peterson's appeal was heard. Nevertheless, in the interim, the judgment remained legally valid and binding, and once "the appeal [was] dismissed, the final judgment . . . [was] that of the trial court." *See id.* at 415.

As noted, the parties do not dispute that "information contained within the recorded certificate of foreclosure [was] all truthful and supported by state trial records." *See* Defs.' Mem. Opp. Pl.'s Mot. Summ. J., Doc. No. 56, at 9. That being so, the mere act of filing a certificate that correctly describes a judicial decision on a valid mortgage cannot be considered a "false statement." By itself, the "certificate of judgment of strict foreclosure is not the muniment of title," *Handsome, Inc. v. Planning & Zoning Comm'n*, 317 Conn. 515, 531 (2015) (internal brackets omitted), and "add[s] nothing to the legal effect of the foreclosure decree," *Cion v. Schupack*, 102 Conn. 644, 649 (1925). The certificate "merely serves as public notice that a particular mortgage or lien has been foreclosed." *Handsome, Inc.*, 317 Conn. at 531; *cf. Ghent v. Meadowhaven Condo.*, 77 Conn. App. 276 (2003) ("[A] notice of lis pendens is simply a notice that, when properly recorded, warns third parties . . . that the title to the property is in litigation.") (citing *Williams v. Bartlett*, 189 Conn. 471, 480 (1983)). "It is the foreclosure action that changes the encumbrance from a conditional conveyance to an absolute one and the certificate only evidences the judicial process by which this has occurred." *Handsome, Inc.*, 317 Conn. at 531–32. Thus, in this case, the certificate merely announced truthfully to third parties that a judgment

of strict foreclosure had been entered against the property, *see* Conn. Gen. Stat. § 49-16 (2016) (providing form for certificate of foreclosure), a statement made no less accurate by the stay on the judgment's enforcement pending Peterson's appeal.

Admittedly, the defendants may have acted prematurely in filing the certificate of foreclosure. Section 49-16 of the Connecticut General Statutes provides that "only after the time for redemption has passed and 'the title to the mortgaged premises has become absolute in the [lienor]' shall the lienor 'make and sign a certificate . . . [that] shall be recorded in the records of the town . . . .'" *Handsome, Inc.*, 317 Conn. at 532 (emphasis removed) (quoting Conn. Gen. Stat. § 49-16). Here, as a result of the automatic stay, the "title . . . ha[d] [not] become absolute" in the defendants, and the certificate of foreclosure therefore did not comply with Section 49-16. *See id.* Without more, however, the defendants' premature filing does not make the certificate of foreclosure "false" as a matter of law. Absent any allegation that the contents of the certificate were materially incorrect or misleading,[6] I conclude that Peterson cannot satisfy the element of false publication required to sustain her action for slander of title.

3.  *Did the Defendants Act "With Malice"?*

The parties more strongly contest the elements of malice and special damages. Malice is generally shown by "presenting evidence of the defendant's statements, acts, and the surrounding circumstances from which an inference of malice may be drawn." Richard E. Kaye, *Cause of Action for Slander of Title to Real Property*, 40 Causes of Action 2d 381 (2009). Although the

---

[6] Peterson does make the additional argument that the certificate's contents were "false" because the judgment of foreclosure itself was obtained through the defendants' fraudulent conduct. In other words, she contends that the judgment was issued as a result of the defendants' "false statement[s]," and so the certificate giving notice of that judgment necessarily contained "false statement[s]" as well. But the certificate does not attest to the truth of the facts underlying the judgment of foreclosure; it merely provides notice of the judgment's existence. Peterson does not dispute that the certificate of foreclosure accurately reflects the existence of the state court judgment. Thus, her alternative theory also fails.

11

definition of malice varies in different contexts, a number of factors may (alone or in combination) indicate malice on the part of a defendant. Such factors include, but are not limited to, the defendant (1) not asserting a claim to the plaintiff's property; (2) being "stranger" to title to the plaintiff's property; (3) having made similar false claims before; (4) having previously relinquished all claims to the plaintiff's property; (5) claiming under a patently invalid contract of sale; or (6) having an ulterior motive in making the claim. *Id.* In addition, courts determining malice consider the defendant's knowledge and experience, the manner of publishing the statement, and the timing of the statement. *Id.* Peterson has not offered evidence to demonstrate the presence of any of these indicia of malice.

In Connecticut, courts have stated that "actual malice requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth." *Fountain Pointe, LLC v. Calpitano*, 144 Conn. App. 624, 655, 76 A.3d 636 (2013). "A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth." *Id.* For example, the Connecticut Appellate Court held that malice was present when the defendants recorded mortgages unsupported by consideration just four days after one sent an e-mail to the plaintiff that promised to make it the defendants' "personal mission to 'legally bury [the plaintiff] for years to come.'" *Id.* at 656. In conjunction with the absence of valid consideration for the mortgages, the court determined that "this e-mail evidences [the defendants'] reckless disregard as to the truth" in the course of their "scheme to create these false mortgages." *Id.*

In contrast to the situation in *Fountain Pointe*—where the finder of fact could reasonably infer malice from the e-mail and the timing of the subsequent recordings of mortgages—here, Peterson has not presented any evidence that the certificate of foreclosure was recorded "with

12

bad or corrupt motive or with an intent to inflict harm." Am. Compl., Doc. No. 32, at ¶ 84. To the contrary, the only evidence in the record indicates that the two law firms retained by the defendants miscommunicated with one another. The firm that recorded the certificate apparently did not adequately consult with the other firm about the pending appeal. Such miscommunication arguably caused the certificate of foreclosure to contain a "negligent misstatement of fact," but negligence "will not suffice" to prove malice. *See Fountain Pointe*, 144 Conn. App. at 655. Peterson has not asserted facts that might support any other scenario, and I find that she has not met her burden to introduce evidence from which a jury could reasonably infer malice on the part of the defendants.

### 4. *Did Peterson Suffer "Special Damages as a Result of Diminished Value of [Her] Property in the Eyes of Third Parties"?*

The defendants concentrate their attack on Peterson's failure to show special pecuniary damages. In contrast to other tort claims—where damages may be presumed and awards for general damages made—the plaintiff in a slander of title claim must plead and ultimately prove that she suffered special damages as a result of the defendant's statements disparaging the plaintiff's title to or interest in real property. *See* 40 Cause of Action 2d 381. Even if the other elements of false publication, derogation of title, and malice are all present, a prima facie case of slander of title cannot be made without proof that special damages were suffered. *Id.*

In the judgment of the Connecticut Appellate Court, "a clouded title, alone, does not constitute damages per se. Rather, a plaintiff must present evidence of how the clouded title resulted in some pecuniary loss." *Gilbert v. Beaver Dam Ass'n of Stratford, Inc.*, 85 Conn. App. 663, 673 (2004). "Pecuniary injuries" are those that "can be, and usually are, without difficulty estimated by a money standard," such as "[l]oss of real or personal property, or of its use, loss of time, and loss of services." *Id.* at 674. "Non-pecuniary injuries"—which do *not* suffice for a

slander of title claim—"are those for the measurement of which no money standard is or can be applicable," such as "[b]odily and mental pain and suffering." *Id.*

In this case, Peterson has failed to present evidence of a pecuniary loss. During her deposition, Peterson was asked what "associated pecuniary losses" she suffered as result of the false publication. Defs.' Mem. Supp. Defs.' Mot. Summ. J., Doc. No. 40, at 6 (quoting Ex. B to Defs. Mem. Supp. Defs.' Mot. Summ. J., Doc. No. 40, Peterson Dep. at 70:19). She was unable to identify any damages: "I'm not going to determine the damages; I'll let the judge determine the damages in a hearing of damages . . . ." *Id.* (quoting Ex. B to Defs.' Mem. Supp. Defs.' Mot. Summ. J., Doc. No. 40, Peterson Dep. at 74:17–19). The only damages that Peterson has alleged are those that resulted from the foreclosure action—claims that have already been dismissed— not the slander of title. *See id.* at 7 (quoting Ex. B to Defs.' Mem. Supp. Defs.' Mot. Summ. J., Doc. No. 40, Peterson Dep. at 72:1–12). Peterson also testified at her deposition that she had no intention of selling her property and that she did not have any appraisals done on the property during the time period in question, meaning that she could not have suffered pecuniary harm as a result of the slander of title. *See* Ex. B to Defs.' Mem. Supp. Defs.' Mot. Summ. J., Doc. No. 40, Peterson Dep. at 76:18–21, 77:1–14, 78:16–21.

To be sure, Peterson has attempted to claim "emotional damage[s]," *see* Defs.' Mem. Supp. Defs.' Mot. Summ. J., Doc. No. 40, at 8 (quoting Ex. B to Defs.' Mem. Supp. Defs.' Mot. Summ. J., Doc. No. 40, Peterson Dep. at 75:1–8), but a cause of action for slander of title is limited to "any false communication which results in harm to interests of another having *pecuniary value*," *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 359 n.15 (2001) (emphasis added). Emotional damages do not fall within the purview of pecuniary loss. *See*

Restatement (Second) of Torts § 623. In short, because she lacks proof of special damages,

Peterson has not satisfied a requisite element for a slander of title claim.

**IV.      Conclusion**

For the above reasons, Peterson's motion for reconsideration [**Doc. No. 29**] and motion

for summary judgment [**Doc. No. 48**] are **DENIED**. The defendants' motion for summary

judgment [**Doc. No. 39**] is **GRANTED**. The Clerk is directed to enter judgment for the

defendants and close the case.


So ordered.

Dated at Bridgeport, Connecticut, this 27th day of September 2016.


                                        /s/ STEFAN R. UNDERHILL
                                        Stefan R. Underhill
                                        United States District Judge